UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN MISSOURI

| | |
|---|---|
| REMEDIOS VALDEPENA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:11-cv-00547-DGK |
| ) | |
| RESEARCH PSYCHIATRIC CENTER, ) | |
| et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This case arises out of Plaintiff Remedios Valdepena's ("Valdepena") termination from Research Psychiatric Center ("RPC")[1], which she alleges was based on her race, national origin, and/or prior complaints of discrimination, in violation of Title VII and 42 U.S.C. § 1981. Pending before the Court is Defendant RPC's Motion for Summary Judgment (Doc. 43). For the following reasons, Defendant's motion is granted.[2]

**Factual Background**

Research Psychiatric Center ("RPC") hired Plaintiff, a Filipino female, as a full-time Mental Health Technician ("MHT") in April 2006. Plaintiff maintained her employment with RFC until December 2009, when RPC terminated her. During Plaintiff's employment, RPC received several complaints from both Plaintiff's co-workers and parents of pre-adolescent

---

[1] Defendant's correct name is Midwest Division-RPC, however, Plaintiff has incorrectly named it "Research Psychiatric Center," and the Court will, accordingly, refer to it as such.
[2] In ruling on this motion, the Court has considered: Defendant RPC's "Motion for Summary Judgment" (Doc. 43); RPC's "Suggestions in Support" (Doc. 44); Plaintiff's "Suggestions in Opposition to Defendant's Motion for Summary Judgment" (Doc. 45); and RPC's "Reply in Further Support of Defendant's Motion for Summary Judgment" (Doc. 51).

patients assigned to her care. RPC management issued several warnings and, at one point, suspended Plaintiff in connection with these complaints.

Specifically, in August 2009, RPC received a complaint from a patient's mother who reported that Plaintiff would not let her twelve-year-old son use the restroom during a supervised visit. The child wet his pants soon after, and the mother complained to Plaintiff's supervisor that Plaintiff would not permit the mother to remove the child and change his clothes, requiring him to remain in wet clothes during the rest of the visit. Nurse Manager Vera Trainer ("Trainer") issued Plaintiff a written warning and two day suspension for this incident.

In October 2009, RPC received a report from a female patient's mother that her child had been touched inappropriately by a male patient who put ice down her blouse. Nurse Manager Marcella Smith ("Smith") also received a similar report about this incident from MHT Chevelle Johnson ("Johnson"), who stated that the incident occurred when Plaintiff left the patients unsupervised while in another room, in violation of company policy. Smith, concerned that Plaintiff was not properly supervising the patients, discussed the incident with Plaintiff, who admitted she left the children unsupervised in the next room while in the kitchen area making popcorn. Smith issued Plaintiff a second written warning for leaving the children unattended, and counseled her to effectively and safely manage patients in the future. Smith also counseled Plaintiff that if another incident of this nature occurred she could be terminated.

In early December 2009, Smith received reports concerning two separate instances where Plaintiff lost control over pre-adolescent patients under her supervision. Soon after these incidents, Smith made the decision to terminate Plaintiff's employment. This decision was made

2

in accordance with RPC's progressive counseling system which permits the termination of employees after three write-ups.

During her employment, Plaintiff also made several formal complaints to RPC, most of which were unrelated to her race or national origin. Plaintiff's first series of complaints began in late February and early March 2008, when she reported a number of issues to Nurse Manager Lisa Barta ("Barta"). The most notable of these complaints concerned incidents Plaintiff had with a co-worker, Lasheena Grimmet ("Grimmet"). Plaintiff complained to Barta that Grimmet mocked her for being named employee of the month, saying "is that the reason why you became employee of the month, because you're doing better with the rounds, ha, ha, ha." Additionally, Plaintiff complained that Grimmet told her to "get out of my way" in passing. Though Plaintiff did not allege discrimination at the time, Plaintiff now alleges that Grimmet's derogatory remark about her employee of the month award was related to her national origin.[3]

In July 2009, Plaintiff also made complaints to Human Resources Director Peggy Tyson ("Tyson") regarding Grimmet's actions towards her. This complaint included: Grimmet's derogatory remark concerning Plaintiff's award of employee of the month; Grimmet's remark to Plaintiff to "get out of my way;" Grimmet's statement to Plaintiff that she should help her blind patient out with his cafeteria tray; and Grimmet's whispering and laughing with two other African-American employees in the cafeteria while focused on Plaintiff and another co-worker. Plaintiff did not tell Tyson that she believed Grimmet's behavior was related to her race or national origin and admits that Grimmet never said anything to her regarding her national origin.

---

[3] Plaintiff alleges that although she did not report the remarks as discriminatory at the time, she knew they were made to her because she was Filipino. Plaintiff also claims that she was not asked by management if she felt the remarks had been made with discriminatory intent and did not know that voicing this concern would have been helpful at the time. Additionally, Plaintiff testified that Grimmet never made comments to any of the African-American or Caucasian employees.

3

However, Plaintiff now alleges that Grimmet's actions "could have been" related to her national origin.

Plaintiff's third internal complaint was in March 2009. The complaint stated that co-worker Al Hurshman ("Hurshman") told Plaintiff to "speak English" at a time when Plaintiff believed she was speaking English. Tyson investigated the complaint, and Hurshman claimed that he did not recall making the statement to Plaintiff. Despite his denial, Tyson gave Hurshman verbal counseling and specifically reminded him of company policies on harassment and discrimination. Furthermore, she told him not to "say anything like that ever again."

**Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## Discussion

**I. Plaintiff fails to state a claim for race and national origin discrimination under Title VII and Section 1981.**

Cases alleging race discrimination under Title VII and § 1982 are evaluated on summary judgment under the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this framework, the employee has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The employee meets this burden, under Title VII, by establishing (1) she is within the class sought to be protected by the statute; (2) she was qualified for her position and performed her duties adequately; (3) she was discharged or suffered an adverse employment action; and (4) there is some evidence from which the court can infer unlawful discrimination is involved in the adverse action. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). Section 1981 requires the plaintiff to meet an almost identical standard to state a claim for race discrimination. *Richmond v. Bd. of Regents of Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir. 1992). To prevail on a § 1981 claim, the plaintiff must prove "(1) statutorily protected participation; (2) adverse employment action; and (3) a causal relationship between the two." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 259 (8th Cir. 1996).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the discharge. *Richmond*, 957 F.2d at 598, citing *McDonnell Douglas*, 411 U.S. 802-03. If the employer meets this burden, the burden shifts back to the employee to establish by a preponderance of the evidence that the reason given by the employer was not the true reason but rather was a pretext for discrimination. *Id.* The employee retains the burden of persuasion throughout and must establish that the employer's proffered reason was not the true reason for the discharge. *Barge*, 87 F.3d at 259,

### A. Plaintiff cannot establish a prima facie case for intentional race or national origin discrimination under Title VII.

As a preliminary matter, Plaintiff has established the first three elements of a prima facie case for intentional race or national origin discrimination under Title VII: she was a member of a protected class, she was qualified for her position, and she suffered an adverse employment action. However, Plaintiff has failed to prove that her termination constituted disparate treatment based on her race or national origin.

"Disparate treatment claims involve allegations of intentional discrimination." *Bennett v. Nucor Corp.*, 656 F.3d 802, 808 (8th Cir. 2011). To create an inference of discrimination based on disparate treatment of other employees, Plaintiff must show that similarly situated employees who are not members of the protected class were "involved in or accused of the same offense and [were] disciplined in different ways." *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (finding that employees are not similarly situated unless they are involved in the same misconduct or misconduct that is of "comparable seriousness"). Further, plaintiff must show that "the disparately treated [employees] were 'similarly situated in all relevant respects.'" *Harvey*, at 972 (quoting *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988)).

6

Here, despite generalized allegations, Plaintiff has offered no evidence that similarly situated employees were involved in or accused of the same actions as Plaintiff and treated in a more favorable manor. For example, Plaintiff testified that Nurse Manager Trainer treated her less favorably than American-born employees by disciplining her in response to a mother's complaint that Plaintiff would not allow her son to use the restroom, which led to him wetting his pants during a supervised visit. Plaintiff testifies that she never saw or heard of Trainer disciplining African-American or Caucasian employees in the same manner and feels that Trainer may have treated her differently because of her race or national origin. However, Plaintiff provides no evidence of similar situations where other employees were treated differently.

Plaintiff also complains of discrimination by Nurse Manager Smith in connection with the October 2009 incident where, after Plaintiff left the room, a male patient inappropriately touched a female patient. While Plaintiff testified that leaving patients alone in a room is a common practice for which no other employees had been disciplined, she provides no evidence that other employees engaged in this behavior. Moreover, at the time of her sanctions, Plaintiff did not report to Smith that other employees leave children unattended in the room.

Additionally, Plaintiff believes that Smith treated her less favorably compared to American-born employees because she assigned an African-American and Caucasian employee, rather than Plaintiff, to orient a new employee. According to Plaintiff, this was like "a slap in [her] face" and made her feel left out. On the other hand, Plaintiff also believes she was treated unfairly based on her national origin because Charge Nurse Judy King ("King") asked Plaintiff to conduct patient admissions because she appreciated how Plaintiff completed the tasks. Plaintiff admits neither Smith nor King ever made any comments regarding her national origin.

Finally, Plaintiff alleges that she observed American-born employees receive better hours, assignments, and transfers, and that they were less likely to be written up or made to "float" from one department to another than foreign-born employees. For example, Plaintiff feels that her assignment to work with pre-adolescent patients was based on her national origin and that another Caucasian employee was allowed to float from the pre-adolescent unit to the adult unit more frequently.

Despite these generalized allegations of differences in treatment, Plaintiff has failed to meet her burden of proving that the employees whom she references were "similarly situated in all relevant respects," or that they engaged in similar conduct for which they were not terminated. *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) ("[I]ndividuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."). In fact, aside from Al Hurshman's alleged discriminatory remark, Plaintiff fails to identify any other employees who engaged in misconduct.

Moreover, although Plaintiff argues that she has direct evidence of national origin discrimination because "Plaintiff's coworker told Plaintiff to 'speak English' in such a manner that it was perfectly clear that he was making fun of Plaintiff's accent," Doc. 45 at 17, this conclusory statement is not direct evidence of discrimination sufficient to establish a prima facie case under Title VII. *See Scarlett v. Sch. of Ozarks, Inc.*, 780 F. Supp. 2d 924, 932 (W.D. Mo. 2011) ("Direct evidence provides a strong causal link between the alleged discriminatory bias and the adverse [action]. It most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias.") (quoting *McCullough v. Univ. of Arkansas,* 559 F.3d 855, 861 (8th Cir. 2009)).

Given that Plaintiff cannot prove that any non-protected employee engaged in the same misconduct and was treated more favorably, she fails to prove a prima facie case for race discrimination under Title VII.

**B. Plaintiff cannot establish a prima facie case for intentional race discrimination under Section 1981.**

Similarly, Plaintiff cannot establish a prima facie case for intentional race discrimination under § 1981. To prevail on a § 1981 claim, the plaintiff must prove "(1) statutorily protected participation; (2) adverse employment action; and (3) a causal relationship between the two." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 259 (8th Cir. 1996)). Additionally, plaintiff must show intentional or purposeful discrimination. *Gen. Bldg. Contractors Assn. v. Pennsylvania,* 458 U.S. 375, 391 (1982).

Section 1981 prohibits purposeful racial discrimination, which protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052-53 (8th Cir. 2011) (noting that an individual would have a case if he was born an Arab, rather than solely on the place or nation of his origin); *Zar v. S.D. Bd. of Exam'rs of Psychologists*, 976 F.2d 459, 467 (8th Cir. 1992). A plaintiff cannot establish a claim under § 1981 merely by showing that she was subject to discrimination based on her national origin. *Torgerson* 643 F.3d at 1053; *Zar*, 976 F.2d at 466. Thus to prevail, Plaintiff must show that she was subjected to intentional discrimination based on the fact that she was born a Filipino, rather than solely on the place or nation of her origin. *Zar*, 976 F.2d at 467.

Here, Plaintiff's only support for her § 1981 claim is that one of her co-workers allegedly told her "speak English." This evidence, however, is not related to Plaintiff's race but rather to

9

her national origin. Accordingly, she has not established a prima facie case for race discrimination under § 1981.

## II. Plaintiff fails to state a claim for retaliation under Title VII or Section 1981.

To demonstrate retaliation, Plaintiff must make a prima facie showing that: (1) she engaged in statutorily protected conduct; (2) there was an adverse employment action; and (3) a causal connection exists between her conduct and the adverse action. *EEOC v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003). Retaliation claims under § 1981 are analyzed under a similar standard. *Kim v. Nash Finch Co*., 123 F.3d 1046, 1060 (8th Cir. 1997).

The parties do not contest that Plaintiff meets the first two requirements for retaliation under Title VII and § 1981. However, Defendant contends that Plaintiff has failed to provide any evidence of a causal relation between her protected activity and her termination. Rather, Defendant maintains that Plaintiff has simply alleged that RPC took an action against her in reaction to her assertion of federally protected rights, without providing any supporting evidence to substantiate her claim.

Plaintiff attempts to establish a causal connection between her complaints and her termination, but this connection is weak at best. In support of this claim, Plaintiff references the complaints she made to management about co-worker Grimmet's and Hurshman's comments regarding her employee of the month award and her need to speak English. However, while she provides evidence that she made complaints, she provides no causal link between these complaints and her firing. To the contrary, the evidence shows that when Plaintiff was fired by Marcella Smith, Smith did not know of Plaintiff's complaints of discrimination. "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary"

10

to prove causation for a prima facie case of retaliation. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). That the human resources department knew of Plaintiff's complaint is insufficient to attribute that knowledge to Smith, and there is, therefore, no evidence that there was a causal connection between Plaintiff's complaints made in 2008 and March 2009 to her termination in December 2009.

**III.    Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff has provided no evidence that such reasoning was mere pretext.**

Even assuming that Plaintiff could establish a prima facie case for discrimination or retaliation under Title VII or § 1981, RPC has met its burden of showing that Plaintiff's termination was the result of nondiscriminatory reasons. Plaintiff's HR file documents the occasions on which Plaintiff received warnings for inappropriate behavior and cites to other general problems RPC had with Plaintiff's ability to perform her job. Thus, RPC has satisfactorily articulated a nondiscriminatory reason for Plaintiff's termination.

Furthermore, Plaintiff has not adequately met her burden of showing that RPC's stated reasons are mere pretexts for discrimination against Plaintiff. To do so, she must set forth evidence showing RPC's articulated reason was false and that discrimination was the real reason. *Kim*, 123 F.3d at 1056. Plaintiff could demonstrate this, for instance, by showing that American-born employees did not receive the same punishment for violations of company policy. Plaintiff, however, merely states that this was the case, but does not point out specific examples of employees engaging in similar conduct and not receiving punishment for their actions. Therefore, Plaintiff's mere speculation that she was terminated due to her race, national origin, or complaints of discrimination fail to establish that RPC's stated reason for firing her

11

was pretext. *See Rollins v. Mo. Dept. of Conservation*, 315 F. Supp. 2d 1011, 1024 (W.D. Mo. 2004) ("[P]laintiff's general, subjective belief that the Defendants treated him differently because of his race is insufficient evidence to show that the legitimate, nondiscriminatory reason for terminating [Plaintiff] were lies used to cover the real reason for termination.").

## Conclusion

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim for race and national origin discrimination or a claim for retaliation under Title VII or § 1981. Accordingly, Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date: October 10, 2012 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT